**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **MPANION LICENSING, LLC,** | **Civil Action No. 2:26-cv-00683** |
| *Plaintiff,* | |
| v. | **JURY TRIAL DEMANDED** |
| **SAMSUNG ELECTRONICS CO., LTD.,** **SAMSUNG ELECTRONICS AMERICA, INC.,** | |
| *Defendants.* | |

## COMPLAINT FOR PATENT INFRINGEMENT

1.     Plaintiff mPanion Licensing, LLC files this Complaint for patent infringement against Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc., for infringing U.S. Patent Nos. 8,489,111 (the "'111 Patent"), 8,965,464 (the "'464 Patent"), 10,334,532 (the "'532 Patent"), 11,690,017 (the "'017 Patent"), and 9,980,231 (the "'231 Patent") (collectively, the "Patents-in-Suit") and alleges as follows:

## THE PARTIES

2.     Plaintiff mPanion Licensing, LLC ("mPanion") is a limited liability company organized and existing under the laws of Texas, with its principal place of business at 4394 Sunbelt Drive, Addison, Texas, 75001.

3.     Upon information and belief, Defendant Samsung Electronics Co., Ltd. ("Samsung Electronics") is a company organized and existing under the laws of the Republic of Korea, with its principal place of business at 129 Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-Do, Korea 16677.

4.　　Upon information and belief, Defendant Samsung Electronics America, Inc. ("Samsung USA") (together with Samsung Electronics, "Samsung" or "Defendants") is a corporation organized and existing under the laws of New York, with its principal place of business at 700 Sylvan Avenue, Englewood Cliffs, New Jersey, 07632. Samsung USA may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas, 75201.

5.　　Upon information and belief, Samsung USA is a wholly owned subsidiary of Samsung Electronics and oversees domestic sales and distribution of Samsung's consumer electronics products, including the products accused of infringement in this case.

## JURISDICTION AND VENUE

6.　　This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

7.　　This Court has personal jurisdiction over Samsung Electronics and Samsung USA because Defendants have committed acts within Texas and this judicial district giving rise to this action and/or have established minimum contacts with this forum such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

8.　　On information and belief, Defendants conduct substantial business in this forum, including (a) engaging in the infringing conduct alleged herein in Texas and in this judicial district; (b) regularly and consistently doing and soliciting business in Texas and in this judicial district; (c) engaging in other persistent courses of conduct such as providing customer service and warranty repairs in connection with their business operations in Texas and in this judicial district; (d) deriving substantial revenue by their offering of infringing products and services and providing infringing goods to consumers in Texas and in this judicial district; and (e) purposefully

2

establishing substantial, systematic, and continuous contacts with the state of Texas and with this District such that they should reasonably expect to be subject to suit here in this judicial district.

9. In the alternative, Federal Rule of Civil Procedure 4(k)(1)(A) confers personal jurisdiction over Defendants because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in Texas and in this judicial district; derive substantial revenue from their business transactions in Texas and in this judicial district; and otherwise avail themselves of the privileges and protection of the laws of the State of Texas such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process. On information and belief, Defendants' unlawful infringing actions have caused and will continue to cause injury to mPanion in Texas and in this judicial district such that Defendants should reasonably expect such actions to have consequences in Texas and in this judicial district.

10. This Court has personal jurisdiction over Samsung Electronics and Samsung USA because, directly or through intermediaries, each has committed acts and continues to commit acts of patent infringement in the state of Texas and within this judicial district, including making, using, offering to sell and/or selling the Accused Products in Texas, and/or importing the Accused Products into Texas, and/or inducing others to commit acts of patent infringement in Texas.

11. For example, Samsung USA maintains regular and established offices in the Eastern District of Texas, including at 6625 Excellence Way, Plano, Texas 75023. Further, on information and belief, Samsung Electronics directs and controls the actions of Samsung USA such that it too maintains regular and established offices in the Eastern District of Texas, including at 6625 Excellence Way, Plano, Texas 75023.

12. Samsung has described its 216,000 square foot Plano office as its "flagship" office and employs over 1,000 people there, as part of its "longstanding and growing commitment to Texas."[1]

13. In addition, Samsung Electronics and Samsung USA have placed or contributed to placing infringing products (including the Accused Products) into the stream of commerce via an established distribution channel knowing, understanding, or intending that such products would be sold and used in the United States, including in the Eastern District of Texas.

14. On information and belief, Samsung Electronics and Samsung USA each has also derived substantial revenues from infringing acts in the Eastern District of Texas, including from the sale and use of infringing products and the Accused Products.

15. Venue is proper as to Samsung Electronics because, among other reasons, pursuant to 28 U.S.C. § 1391(b)–(c) and/or 28 U.S.C. § 1400(b), Samsung Electronics is not a resident in the United States and thus may be sued in any judicial district, including this one. In particular, Samsung Electronics is a corporation organized and existing under the laws of the Republic of Korea. Venue is proper against Samsung Electronics pursuant to 28 U.S.C. § 1391(c)(3) because venue is proper in any judicial district against a foreign corporation. *In re HTC Corp.*, 889 F.3d 1349, 1354 (Fed. Cir. 2018).

16. Venue is proper as to Samsung USA because, among other reasons, pursuant to 28 U.S.C. § 1400(b), Samsung USA has committed acts of infringement in this District and has maintained regular and established places of business in this District including at least at 6625 Excellence Way, Plano, Texas 75023. *In re Cray Inc.*, 871 F.3d 1355, 1362–63 (Fed. Cir. 2017).

---

[1] *Samsung Electronics America to Open Flagship North Texas Campus*, SAMSUNG NEWSROOM U.S. (Apr. 6, 2018), https://news.samsung.com/us/samsung-electronics-america-open-flagship-north-texas-campus.

17.     In other recent patent-infringement actions, Defendants have not disputed this Court's personal jurisdiction over them and have not contested that venue properly lies in this District. *See*, *e.g.*, Samsung Defendants' Answer ¶¶ 8–11, *Transparence, LLC v. Samsung Elecs. Co. Ltd., et al.*, No. 2:24-cv-00910 (E.D. Tex. Feb. 18, 2025), ECF No. 20; Samsung Defendants' Answer ¶¶ 6–9, 14–15, *Four Batons Wireless, LLC v. Samsung Elecs. Co. Ltd., et al.*, No. 2:24-cv-00284 (E.D. Tex. Aug. 19, 2024), ECF No. 24; Samsung Defendants' Answer ¶¶ 8–10, *SpaceTime3D, Inc. v. Samsung Elecs. Co. Ltd., et al.*, No. 2:19-cv-00372 (E.D. Tex. Mar. 16, 2020), ECF No. 22; Samsung Defendants' Answer ¶¶ 10, 12, *Barkan Wireless v. Samsung Elecs. Co. Ltd., et al.*, No. 2:18-cv-00028 (E.D. Tex. Apr. 23, 2018), ECF No. 25.

## THE PATENTS-IN-SUIT

18.     mPanion holds all substantial rights granted in United States Patent No. 8,489,111 (the "'111 Patent"), titled "Real-Time Location and Presence Using a Push-Location Client and Server," a true and correct copy of which is attached as **Exhibit A.**

19.     mPanion holds all substantial rights granted in United States Patent No. 8,965,464 (the "'464 Patent"), titled "Real-Time Location and Presence Using a Push-Location Client and Server," a true and correct copy of which is attached as **Exhibit B**.

20.     mPanion holds all substantial rights granted in United States Patent No. 10,334,532 (the "'532 Patent"), titled "Real-Time Location and Presence Using a Push-Location Client and Server," a true and correct copy of which is attached as **Exhibit C**.

21.     mPanion holds all substantial rights granted in United States Patent No. 11,690,017 (the "'017 Patent"), titled "Real-Time Location and Presence Using a Push-Location Client and Server," a true and correct copy of which is attached as **Exhibit D**.

22.     mPanion holds all substantial rights granted in United States Patent No. 9,980,231 (the "'231 Patent"), titled "Real-Time Location and Presence Using a Push-Location Client and Server," a true and correct copy of which is attached as **Exhibit E**.

23.     Collectively, the '111, '464, '532, '017, and '231 patents are referred to as the "Patents-in-Suit."

24.     The Patents-in-Suit provide specific, non-conventional improvements to then-existing mobile location technology by disclosing systems, methods, and apparatuses for keeping a mobile device's current location without draining the device's battery or flooding the network with redundant location data.

25.     The claims of the Patents-in-Suit are directed to specific systems, methods, and apparatuses for intelligently managing a mobile device's positioning system and location updates based on the device's motion, activity, and position, so that the device's high-power positioning hardware, such as the GNSS/GPS receiver, is engaged only when needed and location is communicated efficiently.

26.     At the time of the inventions, mobile devices determined location using a "pull," or request-based, model. An application that needs to know the device's location continuously—for navigation, fitness tracking, location sharing, or other purposes—repeatedly requests the GNSS/GPS hardware for a new position, at short intervals, for as long as the application needs the current location. *See, e.g.*, '111 Patent, 1:37–40 ("In case of real-time applications such as turn-by-turn navigation, the current location is determined in real-time by requesting the location repeatedly and in frequent timing intervals for the duration such an application is in use.").

27.     This repeated polling is what makes the pull model so battery intensive. The GNSS/GPS receiver is among the most power-hungry components in a mobile device, and each

location fix requires it to power up its radio circuitry, acquire satellite signals, and compute a position. A pull-based device performs this costly operation over and over to keep its location current—even when the device's location has not changed at all. Continuously polling the GNSS/GPS to track a device that is stationary or idle wastes battery and processing resources to recompute a location the device already has. *See, e.g.*, '111 Patent 1:41–45 ("[S]uch a pull or request based system does not maintain a precise current location of device at all times, and doing that in real-time imposes a significant drain of battery resources of the mobile device as well as imposes significant computing costs for the mobile positioning system."). The battery cost of continuously gathering location is reflected in the documentation for the Android operating system used in Samsung's devices.[2] While a pull-based device can reduce this burden by polling the positioning system less frequently, doing so does not account for the possibility that the device's location may change between polls, and therefore risks the application relying on outdated location data.

28.    Conventional workarounds at the time of the inventions did not solve this battery-drain problem. For example, one approach let an application register a "location listener," which directs the operating system to deliver location updates to the application automatically as they are produced. But a listener still requires the operating system to poll the GNSS/GPS hardware on a recurring basis to produce a fresh fix each time—the same power-consuming operation described above. *See, e.g.*, '111 Patent, 3:66–4:3 ("[T]he listener is still periodically polling the GPS, and sending location updates to the subscribing application each time a location is determined by the GPS embedded in the mobile device.").

---

[2] *See About background location and battery life,* ANDROID DEVELOPERS, https://developer.android.com/develop/sensors-and-location/location/battery (last visited Aug. 10, 2026) ("The more frequent location is computed, the more battery is used.").

29.    The Patents-in-Suit turn this model around. Instead of an application or server repeatedly asking the device where it is, the inventions place software—such as a "push-location client"—on the device, and give it responsibility for deciding when a mobile positioning system, such as GNSS/GPS hardware, actually needs to run. Rather than polling the GNSS/GPS continuously, a push-client maintains the device's current location locally and pushes that location to an "always-on" application. The push-location client engages the GNSS/GPS to obtain a new location fix only when there is reason to believe the device's location may have changed. In this way, an always-on application can stay continuously informed of the device's location without forcing the GNSS/GPS to continuously compute a new location fix. *See, e.g.*, '111 Patent 4:14–17 ("The push-location client [] manages the GPS [] and maintains the current location of the device, and provides location updates to the real-time location application [], as well as to the push-based mobile location server."); *id.* at 4:25–26 ("[L]ocation updates are sent [to] the application intelligently when the location changes.").

30.    The inventions achieve this through several specific, non-conventional techniques. For example, before engaging the high-power GNSS/GPS receiver, the device checks whether it is actually moving, using low-power inputs such as the accelerometer, which consumes just a fraction of the GNSS/GPS receiver's power. *See, e.g.*, '111 Patent, 4:62–66 ("[T]he Push-Client [] sends a request to the accelerometer embedded in the device and/or to the mobile operating system to receive the measurements from the accelerometer in order to determine motion of the device."). If the device determines that it is stationary, there is no reason to run the GNSS/GPS receiver, because the device's location is not changing; the device therefore places the GNSS/GPS receiver into a low-power or sleep state and wakes it only when it detects motion indicating that the device's location may have changed. *See, e.g.*, *id.* at 4:66–5:3 ("[W]hen the device is

considered to be stationary, the Push-Client sends the command to put GPS in the power save mode. If motion is detected, the Push-Client requests current location and speed from the embedded GPS."). The device may also confirm whether it has remained stationary using low-power cellular-network information, such as the identity of the serving cell sector, so that it need not wake the GNSS/GPS while the device stays within the same area. *See, e.g.*, *id.* at 2:48–52 ("[T]he embedded GPS or A-GPS chip can be set to sleep mode until the mobile positioning system detects a change in location based on other positioning methods such as cell-ID and/or timing advance.").

31.    None of this was well understood, routine, or conventional at the time of the inventions. Mobile devices then could not keep a location continuously current without paying for it in battery life and network traffic, and the prior art did not disclose the device-side, power-conscious location architecture that the Patents-in-Suit describe. Samsung has since adopted the approaches of the Patents-in-Suit in the Accused Products.

32.    mPanion, and its predecessors-in-interest, have complied with the marking provisions of 35 U.S.C. § 287, to the extent applicable, with respect to the Patents-in-Suit.

## SAMSUNG'S ACCUSED PRODUCTS

33.    Samsung's infringing products (the "Accused Products") include, but are not limited to, Samsung's Galaxy-branded mobile devices that incorporate the location and power-management functionality described herein and that were made, used, sold, offered for sale, or imported from at least 2020 to the present, including (a) Galaxy smartphones and Galaxy Tab tablets running the Android operating system, including at least version 10 and later, and (b) Galaxy Watch devices running Wear OS Powered by Samsung with Samsung's One UI Watch interface, including at least Wear OS 3 and later, each version of which is built on a corresponding version of the Android operating system. The Accused Products include, for example, Samsung's

Galaxy S23, Galaxy S24, and Galaxy S25 series of smartphones, including the Galaxy S23 Ultra, the Galaxy S24 Ultra, and the Galaxy S25 Ultra; Samsung's Galaxy Tab tablets; and Samsung's Galaxy Watch devices, including at least the Galaxy Watch4 through Galaxy Watch8 series, the Galaxy Watch FE, and the Galaxy Watch Ultra, in both their Bluetooth and LTE variants.[3]

34.     The Accused Products incorporate mPanion's patented technology without a license to do so.

**SAMSUNG'S KNOWLEDGE OF THE PATENTS-IN-SUIT AND**<br>**WILLFUL INFRINGEMENT**

35.     Samsung has had knowledge of each of the Patents-in-Suit—the '111, '464, '532, '017, and '231 Patents—and of the infringing nature of the Accused Products since at least the filing and service of this Complaint.

36.     Notwithstanding Samsung's knowledge of the Patents-in-Suit, Samsung continues and, on information and belief, will continue to make, use, offer for sale, sell, and/or import the Accused Products, and to induce infringement by its customers and end users, even though it knows or should know that these actions constitute an unjustifiably high risk of infringing the Patents-in-Suit.

37.     As a result of Samsung's willful infringement (since at least the filing and service of this Complaint), mPanion is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs under 35 U.S.C. § 285.

**COUNT 1 – INFRINGEMENT OF THE '111 PATENT**

38.     mPanion incorporates by reference its allegations in the preceding paragraphs as if fully restated in this paragraph.

---

[3] mPanion's identification of exemplary Accused Products is illustrative and not limiting. mPanion reserves the right to identify additional Samsung products that infringe the Patents-in-Suit.

39.     On July 16, 2013, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '111 Patent entitled "Real-Time Location and Presence Using a Push-Location Client and Server."

40.     mPanion is the owner, by valid assignment, of all rights, title, and interest in and to the '111 Patent, including the right to assert all causes of action arising under the '111 Patent and the right to any remedies for past, current, and future infringement of the '111 Patent.

41.     Samsung is not licensed under the '111 Patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '111 Patent whatsoever.

42.     For example, Claim 11 of the '111 Patent recites:

> 11. An apparatus, comprising:
>
> at least one processor; and
>
> memory storing computer program instructions, wherein the computer program instructions are configured to cause the processor to:
>
> maintain a current location of the apparatus determined by a mobile positioning system,
>
> optimally compute location updates when the location of the apparatus changes, and
>
> detect a driving or in transit status of the apparatus based on "in vehicle" detection methods, comprising one or more of: a proximity sensor of the apparatus configured to detect proximity of the apparatus to a vehicle, an in-vehicle accessory configured to determine the proximity of the apparatus to the in-vehicle accessory, and by the apparatus determining a connection status to the in-vehicle accessory, wherein
>
> the apparatus comprises a mobile positioning system comprising a power-saving mode optimized for when the apparatus is determined to be stationary,
>
> when in the power-saving mode, the mobile positioning system is configured to detect changes in location with a lower accuracy and with lower battery consumption, and
>
> when a change in location is detected by the mobile positioning system while in power-saving mode, the mobile

positioning system is configured to determine the location with higher accuracy.

43.     Samsung has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '111 Patent, including at least Claim 11, in violation of 35 U.S.C. § 271(a), because Samsung makes, uses, offers for sale, sells, and/or imports certain products, including within this District, that embody the patented systems and apparatuses of the '111 Patent, including but not limited to Samsung mobile devices, including smartphones, tablets, and watches, that maintain a current location of the device using a mobile positioning system and that manage a power-saving mode of the mobile positioning system based on whether the device is stationary (the "'111 Accused Products"). Samsung's infringing use of the '111 Accused Products includes its internal use and testing of the '111 Accused Products.

44.     The '111 Accused Products satisfy all claim limitations of one or more of the claims of the '111 Patent, including at least Claim 11, literally or under the doctrine of equivalents.[4]

45.     The '111 Accused Products, such as the Samsung Galaxy S24 Ultra mobile phone, are apparatuses.

46.     The '111 Accused Products comprise at least one processor, such as the Qualcomm Snapdragon 8 Gen 3.

47.     The '111 Accused Products contain memory, including RAM and non-volatile flash storage, that stores computer program instructions—including the Android operating system and Samsung's location and power-management software—which, when executed by the processor, cause the '111 Accused Products to perform the functions described below.

---

[4] This description is illustrative and is not intended to be an exhaustive or limiting explanation of every manner in which each Accused Product infringes the '111 Patent.

48.     The '111 Accused Products maintain the device's current location through location services on the device, including, for example, the LocationManagerService ("LMS") and the Fused Location Provider ("FLP") that Samsung incorporates into and distributes with the '111 Accused Products. LMS is a core Android system service that acts as a central registry for the device's location data. When the mobile positioning system determines a location, the LMS stores that location in system memory and updates it as new location fixes are received. The FLP combines signals from multiple positioning sources—including GNSS (such as GPS), Wi-Fi, cellular positioning, and an accelerometer—to determine the device's location, and, through its getCurrentLocation and getLastLocation functionality, provides the device's current or most recent available location, including by retrieving the maintained location from the device's cache.

49.     The '111 Accused Products are configured to optimally compute location updates when the location of the apparatus changes. The '111 Accused Products compute location updates efficiently—rather than continuously recomputing the device's location regardless of whether the device has moved—through their location services. For example, the '111 Accused Products' location services employ displacement-based filtering through the Android LMS application programming interface, generating and reporting a new location update only when the device has moved more than a threshold distance from its last reported location, and suppressing redundant updates when the device is stationary or has not moved more than the threshold. In this way, the '111 Accused Products avoid unnecessary computation and reporting of the device's location when the device's location has not meaningfully changed.

50.     The '111 Accused Products are configured to detect a driving or in-transit status of the apparatus based on "in vehicle" detection methods. For example, the '111 Accused Products are configured so that, upon establishing a Bluetooth connection with an external accessory, the

13

device's operating system identifies the accessory's Bluetooth Class of Device, and when that Class of Device corresponds to a vehicle audio or hands-free device, the '111 Accused Products determine that the device is connected to an in-vehicle accessory and detect a corresponding driving or in-transit status. The '111 Accused Products thereby determine a connection status to an in-vehicle accessory, which is one of the "in vehicle" detection methods recited in Claim 11.

51.    The mobile positioning system of the '111 Accused Products—including the GNSS/GPS receiver—comprises a power-saving mode in which the positioning system is placed into a low-power or standby state. The '111 Accused Products enter this power-saving mode of the positioning system when the device is determined to be stationary—including when the device determines, using a low-power motion detection system, that it has not moved and enters a device-idle state such as Android "Doze." In the power-saving mode, the positioning system suspends or reduces active GNSS/GPS operation to conserve battery.

52.    While the mobile positioning system is in the power-saving mode and active GNSS/GPS operation is suspended or reduced, the '111 Accused Products detect changes in the device's location using a low-power motion detection system, including a significant motion detector ("SMD") that operates on the device's low-power sensor hub. The SMD is configured to detect motion significant enough to indicate that the device's location is changing, and to screen out insignificant movement that does not indicate a change in the device's location. The SMD detects such changes in location with lower accuracy than the GNSS/GPS receiver (which provides precise location coordinates). And because the SMD operates on the low-power sensor hub, which draws far less power than the GNSS/GPS receiver, it consumes substantially less battery.

53.    When a change in location is detected by the mobile positioning system while in the power-saving mode, the mobile positioning system of the '111 Accused Products is configured

to determine the location with higher accuracy. For example, when the low-power motion detection system detects, while the device is in the "Doze" state, motion indicative of a change in the device's location, the '111 Accused Products exit the power-saving mode and activate higher-accuracy positioning. The low-power sensor hub sends an interrupt that wakes the device from its "Doze" state, and the device reactivates active GNSS/GPS operation to determine the device's location with higher accuracy than the low-power motion detection system provided while in the power-saving mode.

54.    Samsung has had actual knowledge of the '111 Patent and of the infringing nature of the '111 Accused Products since at least the filing and service of this Complaint.

55.    Samsung's infringement of one or more claims of the '111 Patent, including at least Claim 11, is ongoing.

56.    Samsung has also indirectly infringed and continues to indirectly infringe one or more claims of the '111 Patent, including at least Claim 11, by inducing infringement by others in violation of 35 U.S.C. § 271(b). To the extent any acts constituting direct infringement of the '111 Patent are performed by Samsung's customers and/or end users, such acts are performed by those customers and/or end users, using the '111 Accused Products, at the direction and/or control of Samsung and with Samsung's knowledge.

57.    With knowledge of the '111 Patent and of the infringing nature of the '111 Accused Products, Samsung has taken, and continues to take, active steps—directly and/or through contractual relationships with others—with the specific intent to cause its customers and/or end users to use the '111 Accused Products in a manner that infringes the '111 Patent. Such steps include, but are not limited to, designing and configuring the '111 Accused Products to perform the infringing functionality; advising, directing, and instructing customers and end users to use the

15

'111 Accused Products in an infringing manner, including through user manuals, product documentation, marketing materials, and online support resources; and advertising and promoting the infringing features of the '111 Accused Products. Samsung takes these steps knowing, or being willfully blind to the fact, that the induced acts constitute infringement of the '111 Patent. Samsung is aware that the normal and customary use of the '111 Accused Products by its customers and end users infringes the '111 Patent. Samsung's inducement is ongoing.

58.     Samsung's infringement of the '111 Patent is and continues to be willful, intentional, deliberate, and/or in conscious disregard of mPanion's rights. As alleged above, Samsung has had actual knowledge of the '111 Patent and of the infringing nature of the '111 Accused Products since at least the filing and service of this Complaint. Notwithstanding this knowledge, Samsung continues to make, use, offer for sale, sell, and/or import the '111 Accused Products, even though it knows or should know that these actions constitute an unjustifiably high risk of infringing the '111 Patent. Samsung's continued infringement is willful and egregious, entitling mPanion to enhanced damages under 35 U.S.C. § 284.

59.     Samsung's acts of infringement have caused and continue to cause damage to mPanion, and mPanion is entitled to recover from Samsung the damages it has sustained as a result of Samsung's wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty for Samsung's use of the patented inventions, together with interest and costs as fixed by the Court.

### COUNT 2 – INFRINGEMENT OF THE '464 PATENT

60.     mPanion incorporates by reference its allegations in the preceding paragraphs as if fully restated in this paragraph.

61.     On February 24, 2015, the USPTO duly and legally issued the '464 Patent entitled "Real-Time Location and Presence Using a Push-Location Client and Server."

16

62.     mPanion is the owner, by valid assignment, of all rights, title, and interest in and to the '464 Patent, including the right to assert all causes of action arising under the '464 Patent and the right to any remedies for past, current, and future infringement of the '464 Patent.

63.     Samsung is not licensed under the '464 Patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '464 Patent whatsoever.

64.     For example, Claim 1 of the '464 Patent recites:

> 1. A computer-implemented method, comprising:
>
> determining, by a mobile device, whether the mobile device is stationary within specified thresholds based on data from a motion detection system of the mobile device;
>
> detecting, by the mobile device, whether the mobile device is stationary within the specified thresholds based on cell-ID, time advancing, or both;
>
> when the mobile device is determined to be stationary within the specified thresholds, putting the mobile device into a power-saving mode; and
>
> when the mobile device is determined to have a changed state and is not considered to be stationary within the specified thresholds, activating, by the mobile device, a mobile positioning system, and
>
> determining, by the mobile device, a current location of the mobile device from the mobile positioning system to maintain the current location of the mobile device.

65.     Samsung has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '464 Patent, including at least Claim 1, in violation of 35 U.S.C. § 271(a), because Samsung makes, uses, offers for sale, sells, and/or imports certain products, including within this District, that embody the patented apparatus and/or perform the patented methods of the '464 Patent, including but not limited to Samsung mobile devices, including smartphones, tablets, and cellular-enabled watches, that determine whether the device is stationary based on both a motion detection system and cellular network parameters and that manage a power-saving mode of a mobile positioning system based on whether the device is

17

stationary (the "'464 Accused Products"). Samsung's infringing use of the '464 Accused Products includes its internal use and testing of the '464 Accused Products.

66.     The '464 Accused Products satisfy all claim limitations of one or more of the claims of the '464 Patent, including at least Claim 1, literally or under the doctrine of equivalents.[5]

67.     The '464 Accused Products, such as the Samsung Galaxy S24 Ultra mobile phone, are mobile devices comprising a computing architecture, including a main application processor (such as the Qualcomm Snapdragon 8 Gen 3), a low-power sensor hub, and a modem processor, together with memory storing the Android operating system and Samsung's location and power-management software. These processing units collectively execute the computer program instructions that perform the method described below.

68.     The '464 Accused Products include a motion detection system that includes one or more motion sensors—such as an accelerometer (for example, a STMicroelectronics accelerometer/gyroscope inertial measurement unit)—together with a low-power sensor hub. This motion detection system operates on a dedicated, always-on power rail, allowing it to monitor the device's motion while the remainder of the device sleeps or is on standby mode. The motion detection system measures the device's motion—including the device's acceleration—and compares it against specified thresholds, including a programmable motion (wake-up) threshold and a duration threshold, to determine whether the device is stationary. When the measured motion remains below the specified threshold for the specified duration, the '464 Accused Products determine that the device is stationary within the specified thresholds. The '464 Accused Products implement this motion-based stationarity determination through, for example, the device's

---

[5] This description is illustrative and is not intended to be an exhaustive or limiting explanation of every manner in which each Accused Product infringes the '464 Patent.

stationary-detection and significant-motion functionalities, including the Android TYPE_STATIONARY_DETECT and TYPE_SIGNIFICANT_MOTION sensors and Samsung's low-power "smd Wakeup" sensor.

69.     The '464 Accused Products detect whether the mobile device is stationary within the specified thresholds based on cell-ID, timing advance, or both. For example, the device's cellular modem reports the identity of the cell sector serving the device (the "Cell-ID"). The device's Network Location Provider ("NLP") continuously caches the serving Cell-ID and compares the Cell-ID currently reported by the modem against the cached Cell-ID. If the Cell-ID remains the same—meaning the device has not been handed over to a different cell sector and thus remains within the coverage area of the same serving cell sector—the NLP determines that the device is stationary within the specified thresholds. The '464 Accused Products also access the timing advance value reported by the modem (for example, through the CellSignalStrengthLte.getTimingAdvance() functionality); the timing advance value measures the device's distance from the serving cell tower, and a stable timing advance value indicates that the device's location is unchanged.

70.     The '464 Accused Products may also detect stationarity through hardware-backed geofencing, in which the device establishes a geofence defined by the coverage area of the serving cell sector and offloads monitoring of that geofence to the device's low-power cellular modem rather than the main application processor. So long as the device continues to "dwell" within that geofence—that is, remains within the serving cell sector—the '464 Accused Products treat the device as stationary.

71.     When the mobile device is determined to be stationary within the specified thresholds, the '464 Accused Products enter a power-saving mode. For example, the Fused

Location Provider ("FLP") of the '464 Accused Products aggregates the stationarity determinations from both the motion detection system and the cellular-network-based detection described above, and, when both sources indicate that the device is stationary, the '464 Accused Products suppress active GNSS/GPS location requests and place the mobile positioning system, including the GNSS/GPS receiver, into a low-power or standby state to conserve battery. In this low-power or standby state, the mobile positioning system, including the GNSS/GPS receiver, consumes substantially less power than during active location tracking.

72.    The '464 Accused Products determine that the device has a changed state and is no longer stationary in either of two ways: (i) the motion detection system detects motion exceeding the specified motion threshold—such as significant motion, which is motion sufficient to indicate that the device's location is changing—and signals that the device has moved; or (ii) the cellular modem detects a Cell-ID handover, indicating that the device has moved from one cell sector to another. Either event indicates that the device is no longer stationary within the specified thresholds and causes the '464 Accused Products to treat the device as having a changed state.

73.    Upon determining that the mobile device has a changed state and is not stationary, the '464 Accused Products exit the power-saving mode and issue a request for the device's current location—including a high-accuracy location request through the FLP—that causes the GNSS/GPS receiver to come out of its low-power or standby state and resume active operation. The mobile positioning system, including the GNSS/GPS receiver, then determines the device's current location. The '464 Accused Products maintain the device's current location through, for example, the FLP's continuous location updates.

74.    Samsung has had actual knowledge of the '464 Patent and of the infringing nature of the '464 Accused Products since at least the filing and service of this Complaint.

75.     Samsung's infringement of one or more claims of the '464 Patent, including at least Claim 1, is ongoing.

76.     Samsung has also indirectly infringed and continues to indirectly infringe one or more claims of the '464 Patent, including at least Claim 1, by inducing infringement by others in violation of 35 U.S.C. § 271(b). To the extent any acts constituting direct infringement of the '464 Patent are performed by Samsung's customers and/or end users, such acts are performed by those customers and/or end users, using the '464 Accused Products, at the direction and/or control of Samsung and with Samsung's knowledge.

77.     With knowledge of the '464 Patent and of the infringing nature of the '464 Accused Products, Samsung has taken, and continues to take, active steps—directly and/or through contractual relationships with others—with the specific intent to cause its customers and/or end users to use the '464 Accused Products in a manner that infringes the '464 Patent. Such steps include, but are not limited to, designing and configuring the '464 Accused Products to perform the infringing functionality; advising, directing, and instructing customers and end users to use the '464 Accused Products in an infringing manner, including through user manuals, product documentation, marketing materials, and online support resources; and advertising and promoting the infringing features of the '464 Accused Products. Samsung takes these steps knowing, or being willfully blind to the fact, that the induced acts constitute infringement of the '464 Patent. Samsung is aware that the normal and customary use of the '464 Accused Products by its customers and end users infringes the '464 Patent. Samsung's inducement is ongoing.

78.     Samsung's infringement of the '464 Patent is and continues to be willful, intentional, deliberate, and/or in conscious disregard of mPanion's rights. As alleged above, Samsung has had actual knowledge of the '464 Patent and of the infringing nature of the '464

21

Accused Products since at least the filing and service of this Complaint. Notwithstanding this knowledge, Samsung continues to make, use, offer for sale, sell, and/or import the '464 Accused Products, even though it knows or should know that these actions constitute an unjustifiably high risk of infringing the '464 Patent. Samsung's continued infringement is willful and egregious, entitling mPanion to enhanced damages under 35 U.S.C. § 284.

79.     Samsung's acts of infringement have caused and continue to cause damage to mPanion, and mPanion is entitled to recover from Samsung the damages it has sustained as a result of Samsung's wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty for Samsung's use of the patented inventions, together with interest and costs as fixed by the Court.

<b><u>COUNT 3 – INFRINGEMENT OF THE '532 PATENT</u></b>

80.     mPanion incorporates by reference its allegations in the preceding paragraphs as if fully restated in this paragraph.

81.     On June 25, 2019, the USPTO duly and legally issued the '532 Patent entitled "Real-Time Location and Presence Using a Push-Location Client and Server."

82.     mPanion is the owner, by valid assignment, of all rights, title, and interest in and to the '532 Patent, including the right to assert all causes of action arising under the '532 Patent and the right to any remedies for past, current, and future infringement of the '532 Patent.

83.     Samsung is not licensed under the '532 Patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '532 Patent whatsoever.

84.     For example, Claim 13 of the '532 Patent recites:

13. A method, comprising:

   receiving, by a client of a mobile device, location updates from multiple mobile positioning systems embedded inside or integrated with the mobile device;

22

determining, by the client of the mobile device, whether a current location of the mobile device is a distinct new location as compared to a last known location of the mobile device by calculating a distance between the current location of the mobile device and the last known location of the mobile device and comparing the calculated distance to a minimum threshold for determining the distinct new location; and

when the client determines that the current location of the mobile device is a distinct new location, sending a location update to a server, by the client, to maintain the current location of the mobile device, thereby reducing server updates from the mobile device, and thus, reducing network traffic and improving battery performance of the mobile device, wherein

the embedded or integrated mobile positioning systems comprise a power-saving mode optimized for when the client determines that the mobile device is not at a distinct new location, and

when the client determines that the mobile device is not at a distinct new location, the embedded or integrated mobile positioning systems enter the power-saving mode.

85.     Samsung has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '532 Patent, including at least Claim 13, in violation of 35 U.S.C. § 271(a), because Samsung makes, uses, offers for sale, sells, and/or imports certain products, including within this District, that perform the patented methods of the '532 Patent, including but not limited to Samsung mobile devices, including smartphones, tablets, and watches, that determine whether the device is at a distinct new location by comparing the distance the device has moved against a minimum threshold and that manage location updates and a power-saving mode of a mobile positioning system based on that determination (the "'532 Accused Products"). Samsung's infringing use of the '532 Accused Products includes its internal use and testing of the '532 Accused Products.

86.     The '532 Accused Products satisfy all claim limitations of one or more of the claims of the '532 Patent, including at least Claim 13, literally or under the doctrine of equivalents.[6]

87.     The '532 Accused Products, such as the Samsung Galaxy S24 Ultra mobile phone, practice the method of Claim 13 of the '532 Patent, as described below.

88.     The client of the '532 Accused Products—including the Android LocationManagerService ("LMS") and the Fused Location Provider ("FLP")—receives the device's location from multiple mobile positioning systems embedded in or integrated with the device. Those mobile positioning systems include, for example, the device's GNSS/GPS receiver, the Network Location Provider (which provides location based on Wi-Fi and cellular networks), and an accelerometer.

89.     A client of the '532 Accused Products determines whether a current location of the device is a distinct new location as compared to a last known location of the device, by calculating a distance between the current location and the last known location and comparing the calculated distance to a minimum threshold for determining the distinct new location. For example, both the LMS and the FLP implement this determination through a displacement-based mechanism—the LMS through its minimum-distance parameter, and the FLP through its smallest-displacement parameter. Each calculates the distance between the device's current location and its last reported location and compares that distance to the specified minimum threshold. When the device has moved more than the minimum threshold, the client treats the current location as a distinct new location; when the device has not moved more than the minimum threshold, the update is discarded or suppressed and the current location is not treated as a distinct new location.

---

[6] This description is illustrative and is not intended to be an exhaustive or limiting explanation of every manner in which each Accused Product infringes the '532 Patent.

90.     When the client of the '532 Accused Products determines that the device is at a distinct new location—that is, that the displacement exceeds the minimum distance threshold—the '532 Accused Products transmit a corresponding location update over the network to a remote server—such as, for example, Samsung servers used by Samsung's location services and applications, including SmartThings Find—so that the server maintains the device's current location. Samsung itself performs this method, including the sending of location updates to its servers, in the course of its own use, testing, and operation of the '532 Accused Products and the associated server-side services. When the device is not at a distinct new location, the client does not send such an update. By sending a location update only when the device is at a distinct new location, rather than continuously or at fixed intervals, the '532 Accused Products reduce the number of updates transmitted to the server, which reduces network traffic and conserves battery by avoiding unnecessary operation of the device's cellular and other radios.

91.     The mobile positioning systems of the '532 Accused Products—including the GNSS/GPS receiver—comprise a power-saving mode in which the positioning system is placed into a low-power or standby state and active GNSS/GPS operation is suspended or reduced to conserve battery. This power-saving mode is optimized for when the client determines that the device is not at a distinct new location. When the client—including the LMS and the FLP—determines that the device has not moved more than the minimum threshold distance and is therefore not at a distinct new location, the client does not request a new high-power GNSS/GPS fix, which allows the GNSS/GPS receiver to enter or remain in a low-power or standby state rather than a high-power acquisition state.

92.     When the client of the '532 Accused Products—the LMS or the FLP—determines that the device has not moved more than the minimum threshold distance and is therefore not at a

distinct new location, the client ceases or reduces active GNSS/GPS fix requests, and the GNSS/GPS chipset correspondingly cycles down into a low-power or standby state.

93.     Samsung has had actual knowledge of the '532 Patent and of the infringing nature of the '532 Accused Products since at least the filing and service of this Complaint.

94.     Samsung's infringement of one or more claims of the '532 Patent, including at least Claim 13, is ongoing.

95.     Samsung has also indirectly infringed and continues to indirectly infringe one or more claims of the '532 Patent, including at least Claim 13, by inducing infringement by others in violation of 35 U.S.C. § 271(b). To the extent any acts constituting direct infringement of the '532 Patent are performed by Samsung's customers and/or end users, such acts are performed by those customers and/or end users, using the '532 Accused Products, at the direction and/or control of Samsung and with Samsung's knowledge.

96.     With knowledge of the '532 Patent and of the infringing nature of the '532 Accused Products, Samsung has taken, and continues to take, active steps—directly and/or through contractual relationships with others—with the specific intent to cause its customers and/or end users to use the '532 Accused Products in a manner that infringes the '532 Patent. Such steps include, but are not limited to, designing and configuring the '532 Accused Products to perform the infringing functionality; advising, directing, and instructing customers and end users to use the '532 Accused Products in an infringing manner, including through user manuals, product documentation, marketing materials, and online support resources; and advertising and promoting the infringing features of the '532 Accused Products. Samsung takes these steps knowing, or being willfully blind to the fact, that the induced acts constitute infringement of the '532 Patent. Samsung

26

is aware that the normal and customary use of the '532 Accused Products by its customers and end users infringes the '532 Patent. Samsung's inducement is ongoing.

97.     Samsung's infringement of the '532 Patent is and continues to be willful, intentional, deliberate, and/or in conscious disregard of mPanion's rights. As alleged above, Samsung has had actual knowledge of the '532 Patent and of the infringing nature of the '532 Accused Products since at least the filing and service of this Complaint. Notwithstanding this knowledge, Samsung continues to make, use, offer for sale, sell, and/or import the '532 Accused Products, even though it knows or should know that these actions constitute an unjustifiably high risk of infringing the '532 Patent. Samsung's continued infringement is willful and egregious, entitling mPanion to enhanced damages under 35 U.S.C. § 284.

98.     Samsung's acts of infringement have caused and continue to cause damage to mPanion, and mPanion is entitled to recover from Samsung the damages it has sustained as a result of Samsung's wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty for Samsung's use of the patented inventions, together with interest and costs as fixed by the Court.

<strong><u>COUNT 4 – INFRINGEMENT OF THE '017 PATENT</u></strong>

99.     mPanion incorporates by reference its allegations in the preceding paragraphs as if fully restated in this paragraph.

100.    On June 27, 2023, the USPTO duly and legally issued the '017 Patent entitled "Real-Time Location and Presence Using a Push-Location Client and Server."

101.    mPanion is the owner, by valid assignment, of all rights, title, and interest in and to the '017 Patent, including the right to assert all causes of action arising under the '017 Patent and the right to any remedies for past, current, and future infringement of the '017 Patent.

27

102.    Samsung is not licensed under the '017 Patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '017 Patent whatsoever.

103.    For example, Claim 1 of the '017 Patent recites:

1. An apparatus, comprising:

memory storing computer program instructions for a mobile operating system; and

a processor configured to execute the computer program instructions, wherein the instructions are configured to cause the processor to:

determine whether an activity is detected, and when the activity is detected:

send a first event trigger to an application that determines a current or real-time continuous location,

receive a request from the application to provide the current location of the apparatus, and

when the apparatus or the application is determined to be inactive:

send a second event trigger to the application, and responsive to the second event trigger, receive from the application a request to the mobile operating system to put the mobile positioning system in a power saving mode.

104.    Samsung has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '017 Patent, including at least Claim 1, in violation of 35 U.S.C. § 271(a), because Samsung makes, uses, offers for sale, sells, and/or imports certain products, including within this District, that embody the patented apparatus and/or perform the patented methods of the '017 Patent, including but not limited to Samsung mobile devices, including smartphones, tablets, and watches, that, through coordination between the operating system and an application, request the device's location upon detecting user activity and place a mobile positioning system into a power-saving mode upon detecting inactivity (the "'017 Accused Products"). Samsung's infringing use of the '017 Accused Products includes its internal use and testing of the '017 Accused Products.

28

105.    The '017 Accused Products satisfy all claim limitations of one or more of the claims of the '017 Patent, including at least Claim 1, literally or under the doctrine of equivalents.[7]

106.    The '017 Accused Products, such as the Samsung Galaxy S24 Ultra mobile phone and the Samsung Galaxy Watch7 smartwatch, are apparatuses.

107.    The '017 Accused Products contain memory, including RAM and non-volatile flash storage, that stores the computer program instructions of the mobile operating system—including the Android operating system, the One UI framework, and Samsung's proprietary system services and libraries used to manage activity detection and location (such as the SemContextService and SLocation packages).

108.    The '017 Accused Products comprise a processor—such as the Qualcomm Snapdragon 8 Gen 3 in the Galaxy S24 Ultra or the Exynos W1000 in the Galaxy Watch7—configured to execute the mobile operating system instructions stored in memory, wherein the instructions are configured to cause the processor to perform the functions described below.

109.    The instructions of the '017 Accused Products are configured to cause the processor to determine whether an activity is detected. For example, the mobile operating system of the '017 Accused Products determines whether an activity is detected through its activity-detection functionality, including the Android Activity Recognition functionality and Samsung's SemContextService. The device's low-power sensor hub processes data from the accelerometer to classify the device's activity state—such as STILL, WALKING, RUNNING, or IN_VEHICLE—and the processor, executing the mobile operating system, determines whether an activity, such as a transition from a stationary state to a moving or walking state, is detected.

---

[7] This description is illustrative and is not intended to be an exhaustive or limiting explanation of every manner in which each Accused Product infringes the '017 Patent.

110.    When an activity—such as a transition from STILL to WALKING—is detected, the processor of the '017 Accused Products, executing the instructions of the mobile operating system, sends a first event trigger to an application, such as Samsung Health or SmartThings Find, that determines the device's current or real-time continuous location. Samsung Health, for example, determines the user's real-time continuous location during a workout, and SmartThings Find determines the device's location to locate the device. The processor sends this trigger through the Android intent system, including by delivering an asynchronous message—such as an Activity Recognition transition intent or a significant-motion callback—to an application, like SmartThings Find or Samsung Health, that has registered to receive such triggers.

111.    When an activity is detected, the instructions of the '017 Accused Products are further configured to cause the processor to receive a request from the application to provide the current location of the apparatus. For example, after Samsung Health receives the first event trigger indicating that the user has begun a workout, it requests the device's current location by calling a location-request function (such as requestLocationUpdates) to the device's positioning system, and the processor, executing the instructions of the mobile operating system, receives that request to provide the device's current location.

112.    When the apparatus or the application is determined to be inactive, the instructions of the '017 Accused Products are configured to cause the processor to send a second event trigger to the application. For example, the processor of the '017 Accused Products, executing the instructions of the mobile operating system, determines that the device or application is inactive—including when the device's activity-detection functionality detects a transition from a moving state back to a STILL or stationary state. Upon determining the inactive state, the processor sends

30

a second event trigger to the subscribing application, such as Samsung Health or SmartThings Find, by delivering a "stationary" or activity-exit intent to the application.

113.    Responsive to the second event trigger, the instructions of the '017 Accused Products are configured to cause the processor to receive from the application a request to the mobile operating system to put the mobile positioning system in a power-saving mode. For example, after Samsung Health receives the second event trigger indicating that the user's activity has ceased, it engages its auto-pause logic and calls a function to remove or cease its location requests (such as removeLocationUpdates), thereby requesting that the mobile operating system put the mobile positioning system into a power-saving mode, and the processor, executing the instructions of the mobile operating system, receives that request. Responsive to that request, the mobile operating system places the mobile positioning system, including the GNSS/GPS receiver, into a low-power or standby state.

114.    Samsung has had actual knowledge of the '017 Patent and of the infringing nature of the '017 Accused Products since at least the filing and service of this Complaint.

115.    Samsung's infringement of one or more claims of the '017 Patent, including at least Claim 1, is ongoing.

116.    Samsung has also indirectly infringed and continues to indirectly infringe one or more claims of the '017 Patent, including at least Claim 1, by inducing infringement by others in violation of 35 U.S.C. § 271(b). To the extent any acts constituting direct infringement of the '017 Patent are performed by Samsung's customers and/or end users, such acts are performed by those customers and/or end users, using the '017 Accused Products, at the direction and/or control of Samsung and with Samsung's knowledge.

117.    With knowledge of the '017 Patent and of the infringing nature of the '017 Accused Products, Samsung has taken, and continues to take, active steps—directly and/or through contractual relationships with others—with the specific intent to cause its customers and/or end users to use the '017 Accused Products in a manner that infringes the '017 Patent. Such steps include, but are not limited to, designing and configuring the '017 Accused Products to perform the infringing functionality; advising, directing, and instructing customers and end users to use the '017 Accused Products in an infringing manner, including through user manuals, product documentation, marketing materials, and online support resources; and advertising and promoting the infringing features of the '017 Accused Products. Samsung takes these steps knowing, or being willfully blind to the fact, that the induced acts constitute infringement of the '017 Patent. Samsung is aware that the normal and customary use of the '017 Accused Products by its customers and end users infringes the '017 Patent. Samsung's inducement is ongoing.

118.    Samsung's infringement of the '017 Patent is and continues to be willful, intentional, deliberate, and/or in conscious disregard of mPanion's rights. As alleged above, Samsung has had actual knowledge of the '017 Patent and of the infringing nature of the '017 Accused Products since at least the filing and service of this Complaint. Notwithstanding this knowledge, Samsung continues to make, use, offer for sale, sell, and/or import the '017 Accused Products, and to induce infringement by its customers and end users, even though it knows or should know that these actions constitute an unjustifiably high risk of infringing the '017 Patent. Samsung's continued infringement is willful and egregious, entitling mPanion to enhanced damages under 35 U.S.C. § 284.

119.    Samsung's acts of infringement have caused and continue to cause damage to mPanion, and mPanion is entitled to recover from Samsung the damages it has sustained as a result

32

of Samsung's wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty for Samsung's use of the patented inventions, together with interest and costs as fixed by the Court.

## COUNT 5 – INFRINGEMENT OF THE '231 PATENT

120.    mPanion incorporates by reference its allegations in the preceding paragraphs as if fully restated in this paragraph.

121.    On May 22, 2018, the USPTO duly and legally issued the '231 Patent entitled "Real-Time Location and Presence Using a Push-Location Client and Server."

122.    mPanion is the owner, by valid assignment, of all rights, title, and interest in and to the '231 Patent, including the right to assert all causes of action arising under the '231 Patent and the right to any remedies for past, current, and future infringement of the '231 Patent.

123.    Samsung is not licensed under the '231 Patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '231 Patent whatsoever.

124.    For example, Claim 10 of the '231 Patent recites:

10. A computer-implemented method, comprising:

detecting, by a mobile device, whether a location of the mobile device has changed by using information associated with signals received by the mobile device;

when the location of the mobile device has changed, activating, by the mobile device, a mobile positioning system, and determining, by the mobile device, a current location of the mobile device from the mobile positioning system to maintain the current location of the mobile device; and

when the location of the mobile device has not changed based on changes in signals received above specified thresholds, putting receive circuitry of a global positioning system (GPS) in standby mode, and shutting down other power-consuming circuits of the GPS system, wherein

33

> the detection of whether the location of the mobile device has changed further comprises monitoring for changes in the signals to detect whether the location of the mobile device has changed.

125. Samsung has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '231 Patent, including at least Claim 10, in violation of 35 U.S.C. § 271(a), because Samsung makes, uses, offers for sale, sells, and/or imports certain products, including within this District, that perform the patented methods of the '231 Patent, including but not limited to Samsung mobile devices, including smartphones, tablets, and watches, that detect whether the device has changed location using information associated with received signals and that place the GNSS/GPS receive circuitry into a standby mode when the device's location has not changed (the "'231 Accused Products"). Samsung's infringing use of the '231 Accused Products includes its internal use and testing of the '231 Accused Products.

126. The '231 Accused Products satisfy all claim limitations of one or more of the claims of the '231 Patent, including at least Claim 10, literally or under the doctrine of equivalents.[8]

127. The '231 Accused Products, such as the Samsung Galaxy S24 Ultra mobile phone, perform a computer-implemented method, as described below.

128. The '231 Accused Products detect whether the location of the device has changed by using information associated with signals received by the device. For example, the device's location framework compares the device's current location fix against its last reported location and, when the distance between the two does not exceed a specified minimum-displacement threshold, treats the device as not having changed location and suppresses the location update. Because each location fix is derived from signals the device receives—including GNSS/GPS, Wi-

---

[8] The following description is illustrative and is not intended to be an exhaustive or limiting explanation of every manner in which each Accused Product infringes the '231 Patent.

Fi, and cellular signals—the '231 Accused Products detect whether the device's location has changed using information associated with received signals.

129. When the location of the device has changed, the '231 Accused Products activate a mobile positioning system and determine the device's current location from that mobile positioning system to maintain the device's current location. For example, when the received-signal information indicates that the device has moved more than the specified threshold, the '231 Accused Products re-enable higher-accuracy positioning, causing the GNSS/GPS receiver to resume active operation and produce a new location fix, and the device maintains its current location from the positioning system.

130. When the location of the device has not changed based on changes in received signals above specified thresholds, the '231 Accused Products put the receive circuitry of the GNSS/GPS into a standby mode and shut down other power-consuming circuits of the GNSS/GPS system. For example, when the device's location has not changed by more than the specified threshold, the '231 Accused Products suspend active GNSS/GPS operation and place the GNSS/GPS receiver into a low-power or standby state, powering down GNSS/GPS circuitry to conserve battery rather than continuing to acquire and track satellite signals.

131. The detection of whether the device's location has changed further comprises monitoring for changes in the received signals to detect whether the device's location has changed. For example, the '231 Accused Products monitor changes in the signals the device receives—including changes in the identity of the serving cell sector (Cell-ID) and changes in the timing advance or signal strength reported by the device's cellular modem—to detect whether the device's location has changed.

132.   Samsung has had actual knowledge of the '231 Patent and of the infringing nature of the '231 Accused Products since at least the filing and service of this Complaint.

133.   Samsung's infringement of one or more claims of the '231 Patent, including at least Claim 10, is ongoing.

134.   Samsung has also indirectly infringed and continues to indirectly infringe one or more claims of the '231 Patent, including at least Claim 10, by inducing infringement by others in violation of 35 U.S.C. § 271(b). To the extent any acts constituting direct infringement of the '231 Patent are performed by Samsung's customers and/or end users, such acts are performed by those customers and/or end users, using the '231 Accused Products, at the direction and/or control of Samsung and with Samsung's knowledge.

135.   With knowledge of the '231 Patent and of the infringing nature of the '231 Accused Products, Samsung has taken, and continues to take, active steps—directly and/or through contractual relationships with others—with the specific intent to cause its customers and/or end users to use the '231 Accused Products in a manner that infringes the '231 Patent. Such steps include, but are not limited to, designing and configuring the '231 Accused Products to perform the infringing functionality; advising, directing, and instructing customers and end users to use the '231 Accused Products in an infringing manner, including through user manuals, product documentation, marketing materials, and online support resources; and advertising and promoting the infringing features of the '231 Accused Products. Samsung takes these steps knowing, or being willfully blind to the fact, that the induced acts constitute infringement of the '231 Patent. Samsung is aware that the normal and customary use of the '231 Accused Products by its customers and end users infringes the '231 Patent. Samsung's inducement is ongoing.

136.    Samsung's infringement of the '231 Patent is and continues to be willful, intentional, deliberate, and/or in conscious disregard of mPanion's rights. As alleged above, Samsung has had actual knowledge of the '231 Patent and of the infringing nature of the '231 Accused Products since at least the filing and service of this Complaint. Notwithstanding this knowledge, Samsung continues to make, use, offer for sale, sell, and/or import the '231 Accused Products, and to induce infringement by its customers and end users, even though it knows or should know that these actions constitute an unjustifiably high risk of infringing the '231 Patent. Samsung's continued infringement is willful and egregious, entitling mPanion to enhanced damages under 35 U.S.C. § 284.

137.    Samsung's acts of infringement have caused and continue to cause damage to mPanion, and mPanion is entitled to recover from Samsung the damages it has sustained as a result of Samsung's wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty for Samsung's use of the patented inventions, together with interest and costs as fixed by the Court.

## DEMAND FOR JURY TRIAL

138.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, mPanion demands a trial by jury on all issues.

## FEES AND COSTS

139.    Samsung's willful and deliberate infringement (since at least the filing and service of this Complaint) renders this an "exceptional case," and an award of attorneys' fees and costs to mPanion is justified pursuant to 35 U.S.C. § 285.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff mPanion Licensing, LLC requests entry of judgment in its favor and against Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc., as follows:

a.  Declaring that Samsung has directly infringed the Patents-in-Suit, and/or induced the infringement of the Patents-in-Suit;

b.  Declaring that Samsung's infringement of each of the Patents-in-Suit since at least the filing and service of this Complaint is willful;

c.  Awarding mPanion damages, in an amount no less than a reasonable royalty, arising out of Samsung's infringement of the Patents-in-Suit, including damages for any continuing post-verdict infringement through entry of final judgment, in an amount according to proof;

d.  Awarding mPanion the trebling of any and all damages awarded to mPanion by reason of Samsung's willful infringement of the Patents-in-Suit, pursuant to 35 U.S.C. § 284;

e.  Awarding mPanion pre-judgment and post-judgment interest, in an amount according to proof;

f.  Awarding mPanion a compulsory ongoing royalty, in an amount according to proof;

g.  Awarding attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

h.  Awarding mPanion such other costs and further relief as the Court may deem just and proper.

Dated this 12th day of August, 2026.

Respectfully submitted,

/s/ *Shawn Blackburn*
Shawn Blackburn (TX 24089989) – Lead Counsel
Hunter Vance (TX 24102596)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
sblackburn@susmangodfrey.com
hvance@susmangodfrey.com

Xiaoming Wang (NY 6053466)
**SUSMAN GODFREY L.L.P.**
One Manhattan West
395 Ninth Avenue, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
twang@susmangodfrey.com

Ryan Loveless (TX 24036997)
**CHERRY JOHNSON SIEGMUND JAMES PC**
One Glen Lakes Tower
8140 Walnut Hill Lane, Suite 105
Dallas, Texas 75231
Telephone: (972) 987-0709
Facsimile: (866) 627-3509
rloveless@cjsjlaw.com

Mark D. Siegmund (TX 24117055)
Tanner Daniels (TX 24143614)
**CHERRY JOHNSON SIEGMUND JAMES PC**
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
Telephone: (254) 732-2242
Facsimile: (866) 627-3509
msiegmund@cjsjlaw.com
tdaniels@cjsjlaw.com

Andrea L. Fair (TX 24078488)
**MILLER FAIR HENRY, PLLC**
1507 Bill Owens Parkway
Longview, TX 75604

39

Telephone: (903) 757-6400
Facsimile: (903) 757-2323
andrea@millerfairhenry.com

*Attorneys for Plaintiff mPanion Licensing, LLC*

40